IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00864-RBJ-STV

LOUIS MICHAEL ZAMORA,

    Plaintiff,

v.

BAKER HUGHES,

    Defendant.

_____

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Scott T. Varholak

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") [#20], which was referred to this Court [#23]. This Court has carefully considered the Motion and related briefing, the case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND[1]

Plaintiff Louis Michael Zamora began his employment with Defendant in 2006 or 2007 as a Driver Equipment Operator. [#7 at 15] Plaintiff was born in November 1951

---

[1] The facts are drawn from the allegations in Plaintiff's Amended Employment Discrimination Complaint (the "Amended Complaint") [#7], which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)). The Amended Complaint attaches as exhibits various documents related to the charge of

and thus was 54 or 55 years old at the time he commenced his employment with Defendant. [*Id.*] On February 4, 2007, Plaintiff was injured on the job. [*Id.* at 6, 17] Although somewhat unclear based upon the allegations in the Amended Complaint, it appears that, following the accident, Plaintiff initially was placed on light duty, but then went on medical leave when he required surgeries for his injury. [*Id.* at 17] On September 7, 2007, Plaintiff received a letter from Defendant's "medical specialist" stating that Plaintiff was "not fit" to return to work. [*Id.* at 6]

During 2008-2009, Plaintiff sought relief from the New Mexico Workers Compensation Administration, but his claim was denied. [*Id.* at 7] On November 9, 2009, Plaintiff received a letter from the Office of the Attorney General of New Mexico Investigations Division notifying him that it had determined that "this matter" was a "civil issue." [*Id.*] On June 4, 2011, Plaintiff served Defendant with a "Notice & Demand" that demanded a response from Defendant within 30 days, but Defendant did not respond.

---

discrimination Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") prior to filing this lawsuit, including Plaintiff's Intake Questionnaire, the Charge of Discrimination, and the Notice of Right to Sue Letter (the "EEOC Documentation"). [#7 at 10-29] Defendant does not object to the Court's consideration of the EEOC Documentation in connection with its Motion. [#20] Nor would such an objection be valid, as the Tenth Circuit has held that "[i]n evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits . . . and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The Court thus finds that the factual allegations set forth in the EEOC Documentation are properly incorporated by reference into the Amended Complaint, and the Court considers them for purposes of resolving the Motion. Defendant's Motion includes a number of factual statements that are presented without citation to the record and that do not appear in the Amended Complaint or its attachments—*e.g.*, "BJ Services, which Baker Hughes acquired in 2010, hired [Plaintiff] in November 2006 at its Farmington, New Mexico location." [#20 at 1-2] The Court disregards these statements for purposes of this Motion, because "[i]n ruling on a motion to dismiss, the district court is limited to the facts pled in the complaint." *Gossett v. Barnhart*, 139 F. App'x 24, 25 (10th Cir. 2005)

[*Id.*] As a result, on July 9, 2011, Plaintiff served Defendant with a "Notice of Default." [*Id.*] On August 13, 2011, Plaintiff served Defendant with a "Declaration of Lien." [*Id.*] On September 24, 2011, Plaintiff served Defendant with a "Notice of 'Criminal Complaint.'" [*Id.*]

On October 13, 2011, Plaintiff gave notice and filed a complaint against Defendant with the United States Department of Justice (the "DOJ"). [*Id.* at 7, 18] On November 21, 2011, Plaintiff gave notice and filed a complaint against Defendant with the United States Securities and Exchange Commission (the "SEC"). [*Id.*] In November 2012, Plaintiff also gave notice of his complaint against Defendant to the Federal Bureau of Investigation's Fraud Division (the "FBI"). [*Id.*] On March 30, 2016, Plaintiff gave notice and filed a complaint against Defendant with the United States Attorney's Office for the District of Colorado (the "Colorado US Attorney").[2] [#7 at 8, 18]

On May 1, 2016, while Plaintiff was still on medical leave and recovering, Plaintiff received notification from Defendant by mail that his employment was terminated.[3] [*Id.* at 8, 16] During the over nine-year period that he was on medical leave, Plaintiff had nine major surgeries, including two total knee replacements, two total shoulder replacements, two total hip replacements, and upper and lower spine surgeries. [*Id.* at 7, 16, 17] Plaintiff

---

[2] The substance of—and purported legal basis for—the notices Plaintiff served on Defendant and the complaints Plaintiff raised with the various federal government authorities is unspecified in the Amended Complaint. Although certain of these documents may have been attached to the complaint Plaintiff originally filed with the Court [#1], prior to Plaintiff filing his Amended Complaint, the Court advised Plaintiff that "[t]he Court will not consider any claims raised in separate amendments, supplements, motions, or other documents that are not included in the amended complaint now being ordered by the Court" [#5 at 4-5].

[3] On April 30, 2016, Plaintiff received notice from an unspecified source that his medical benefits had ended. [*Id.* at 23]

also suffers from carpal tunnel syndrome in both hands. [*Id.* at 17] At some point while he was on medical leave, Plaintiff was determined to be disabled for purposes of receiving Social Security Disability Insurance ("SSDI"). [*Id.*]

On May 23, 2016, someone in Defendant's Human Resources department informed Plaintiff that he had been terminated, along with his basic life insurance and accidental death and disability insurance. [*Id.* at 16] Human Resources allegedly also told Plaintiff that he was subject to "automatic termination" at age 65 and that he had been terminated because he had reached age 65.[4] [*Id.*] At the time, Plaintiff had not yet actually reached 65; Plaintiff turned 65 on November 21, 2016. [*Id.*]

On June 22, 2016, Plaintiff completed an Intake Questionnaire with the EEOC. [#7 at 15-18] In the Intake Questionnaire, Plaintiff claims that Defendant discriminated against him on the basis of age and disability and retaliated against him based upon his complaints to the SEC, DOJ, FBI, and Colorado US Attorney. [*Id.* at 16] On September 2, 2016, Plaintiff signed the Charge of Discrimination prepared by the EEOC in response to the Intake Questionnaire submitted by Plaintiff. [*Id.* at 19, 23] The Charge of Discrimination alleges that Defendant discriminated and retaliated against Plaintiff on the basis of age in violation of the Age Discrimination in Employment Act of 1967 (the "ADEA") and discriminated and retaliated against Plaintiff on the basis of disability in violation of the Americans with Disabilities Act of 1990, as amended (the "ADA"). [*Id.* at 23] On January 12, 2018, the EEOC issued Plaintiff a Dismissal and Notice of Rights (the "Notice of Right to Sue Letter"), which included a determination that the EEOC was "unable to

---

[4] It is unclear from the allegations in the Amended Complaint whether this conversation with Human Resources also took place on May 23, 2016 or on some other date. [#7 at 16]

conclude that the information obtained establishes violations of the statutes" but the EEOC did "not certify that [Defendant] is in compliance with the statutes." [*Id.* at 11] Plaintiff alleges that he received the Notice of Right to Sue Letter on January 16, 2018. [*Id.* at 10, 11]

On April 12, 2018, Plaintiff filed this lawsuit pro se. [#1] On April 13, 2018, Magistrate Judge Gordon P. Gallagher issued an Order notifying Plaintiff of deficiencies in his complaint and ordering Plaintiff to file an amended complaint within 30 days. [#5] On May 9, 2018, Plaintiff filed the Amended Complaint, which asserted the following two claims: (1) "Unlawfully withholding Insurance, evasion of obligation to compensate injured worker;" and (2) "Termination of Employment." [#7] Both claims allege discrimination on the basis of age and disability based upon termination of employment, different terms and conditions of employment, failure to accommodate disability, and retaliation.[5] [*Id.* at 3, 4] Plaintiff seeks various forms of relief for his claims, including compensation for lost income and lost wages "in Arrears for the Last 11 years @ 18% per year with a 25% Assessed Penalty plus Treble Damages" in a total amount of $893,111.52. [*Id.* at 9]

On May 14, 2018, following review of the Amended Complaint pursuant to 28 U.S.C. § 1915, Judge Lewis T. Babcock issued an Order to Dismiss in Part and to Draw Case. [#8] Judge Babcock found that Plaintiff's First Claim "appears to be repetitive of his second claim of termination of employment," because "[t]here are no separate allegations that [Plaintiff's] insurance was withheld or that the employer evaded compensating him except for the fact that he was terminated." [*Id.* at 4] Accordingly, the

---

[5] Claim One also alleges that "Employer/Insurer failed to provide Employers & Contract[ual] Liability Insurance" [#7 at 3], while Claim Two alleges that "Employer/Insurer mis-calculated Plaintiff's age & Terminated Plaintiff prior to 65" [*id.* at 4].

Court dismissed Plaintiff's First Claim as repetitive. [*Id.*] Judge Babcock further determined that he would "not address at [that] time the merits of [Plaintiff's] employment termination claim, pursuant to the ADA and ADEA," and instead Claim Two was drawn to a presiding judge.[6] [#8 at 4]

On July 5, 2018, Defendant filed the instant Motion, arguing that Plaintiff's allegations regarding his discrimination and retaliation claims are insufficient to state a claim under the ADA and ADEA. [#20] On September 20, 2018, Plaintiff filed his response to the Motion [#29],[7] and Defendant subsequently filed its reply in support of the Motion [#30].

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded

---

[6] Although the Amended Complaint named Lorenzo Simonelli as the CEO of Baker Hughes, a GE Company, as the Defendant, Judge Babcock "liberally construe[d] the claims as asserted against the company Baker Hughes itself, instead of Mr. Simonelli individually." [*Id.* at 4] This Court subsequently directed the Clerk of Court to amend the case caption to reflect Baker Hughes as the Defendant—instead of Lorenzo Simonelli, individually. [#11]

[7] Plaintiff's response is captioned "Plaintiff's Motion Requests That This Court 'Deny Defendant's' Motion to Dismiss Plaintiff's, Amended Complaint in Its Entirety." [#29 at 1] Although styled as a "motion," the document appears to be intended as a response to the Motion to Dismiss (*e.g.*, the primary relief sought in the title and body of the document is the denial of the Motion to Dismiss), and the Court interprets it as such. The Court notes, however, that the response does make numerous additional requests for relief, including the imposition of sanctions on opposing counsel, the entry of default judgment, and a grand jury investigation. [#29 at 3, 6] There does not appear to be a valid legal or factual basis for any of the requested relief, but the Court refrains from addressing these requests as they have not been properly raised with the Court. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document.")

factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a *pro se* litigant." *Id.* at 1110 n.3. The Court, however, cannot be a *pro se* litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

**III. ANALYSIS**

**A. ADA Claim**

Plaintiff alleges that he was terminated on the basis of his disability. [#7 at 4] Title I of the ADA prohibits employers from discriminating based on disability. 42 U.S.C. § 12112(a). "To establish a prima facie case of discrimination under the ADA, an employee must show: (1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against because of her disability." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004). Even where an employer has admitted that the plaintiff's disability played a prominent part in the employer's adverse employment decision, or the plaintiff has other direct evidence of discrimination based upon disability, the plaintiff still must show that she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired. *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003).

Defendant first argues that Plaintiff has failed to allege that he is disabled within the meaning of the ADA. [#20 at 7] A disability, for purposes of the ADA, is defined as "a physical or mental impairment that substantially limits one or more major life activities" of an individual. 42 U.S.C. § 12102. Defendant contends that Plaintiff "references . . . many procedures in the 9 years since his initial injury, but that is the extent of the information pleaded." [#20 at 7] The Court disagrees. In the Intake Questionnaire, which is incorporated into Plaintiff's Amended Complaint, Plaintiff identifies the specific surgeries he has had over the last nine years, states that he is "still recovering" from those surgeries, and indicates that his condition prevents or limits his ability to lift, sleep, walk,

8

and work. [#7 at 16, 17] Plaintiff further alleges that he was determined to be disabled for purposes of receiving SSDI.[8] [*Id.* at 17] The Court finds these allegations sufficient to allege a disability within the meaning of the ADA.

Defendant next argues that Plaintiff "has not pled any facts to show he was qualified to perform the essential functions of the job or even that he attempted to inquire about coming back to work in the 9 years following his on-site injury." [#20 at 7] The Court agrees. Nothing in the Amended Complaint suggests that Plaintiff was ready to return to work at the time of his termination. To the contrary, Plaintiff alleges that he was "still recovering" and that he had been determined disabled for purposes of receiving SSDI. [#7 at 16, 17] Nor does Plaintiff "point to having requested any accommodation in [2018] that would have enabled [him] to attend [his] job." *Winston v. Ross*, 725 F. App'x 659, 665 (10th Cir. 2018). "[T]he term reasonable accommodation refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of [his] job." *Id.* (quoting *Hudson v. MCI Telecomms. Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996)). To the extent Plaintiff contends that Defendant was required to hold his position for him indefinitely, Tenth Circuit precedent "make[s] it clear" that an employer is "not obligated to continue [P]laintiff on indefinite medical leave for some eventual accommodation if and when [he] might try to return." *Vice v. Blue Cross*

---

[8] Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Supreme Court has held that "despite the appearance of conflict that arises from the language of the [ADA and Social Security Act], the two claims do not inherently conflict" and thus "there are . . . situations in which an SSDI claim and an ADA claim can comfortably exist side by side." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802–03 (1999).

*& Blue Shield of Okla.*, 113 F. App'x 854, 856 (10th Cir. 2004); *see also Boykin v. ATC/VanCom of Colo., L.P.*, 247 F.3d 1061, 1064 (10th Cir. 2001) ("We are not persuaded, however, that reasonable accommodation obligates an employer to place a disabled employee on indefinite leave until a position for which he is qualified opens up.").

Accordingly, the Court finds that Plaintiff has failed to state a claim for discrimination under the ADA and respectfully **RECOMMENDS** that the Motion be **GRANTED** to the extent is seeks dismissal of Plaintiff's ADA discrimination claim.[9]

### B. ADEA Claim

Plaintiff also asserts a claim of discrimination pursuant to the ADEA, alleging that he was terminated because of his age. [#7 at 4] The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Under the ADEA, the plaintiff "has the ultimate burden of proving her employer intentionally discriminated against her." *Riser v. QEP Energy*, 776 F.3d 1191, 1199 (10th Cir. 2015). To succeed on an ADEA claim, a plaintiff must prove that age was the "but for" cause for the adverse employment action. *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010). Although age does not have to be the "sole motivating factor in the employment decision," the plaintiff must show that "age was the factor that made a

---

[9] Defendant also argues that Plaintiff has not adequately alleged that he was terminated because of his disability. [#20 at 7-8] Having found that Plaintiff failed to allege that he was qualified for the position, the Court need not reach this argument. *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995) ("Because White has failed to establish the second element of his claim, that he was 'qualified' under the ADA, it follows that we need not address the remaining element of his claim, whether York terminated him solely because of his disability.")

difference." *Id.* (quotations omitted). A plaintiff may establish intentional discrimination either by direct evidence or circumstantial evidence. *Riser*, 776 F.3d at 1199.

"Where a plaintiff seeks to use circumstantial evidence to show discriminatory intent, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [ ] (1973) applies." *Id.* at 1199-1200; *see also Jones*, 617 F.3d at 1278 (holding that the *McDonnell Douglas* framework continues to apply to ADEA claims). Under this framework, a plaintiff first must establish a prima facie case of unlawful discrimination. *Jones*, 617 F.3d at 1278; *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) "A prima facie case generally requires a plaintiff to show, by a preponderance of the evidence, that she is a member of a protected class, she suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination." *Bennett*, 792 F.3d at 1266. "Once the plaintiff has established her prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* Once that occurs, "the burden of production shifts again to the plaintiff to show that the defendant's explanation was merely pretextual." *Id.* "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* (quotation omitted).

Here, Defendant argues that Plaintiff has failed to allege a prima facie case of age discrimination. [#20 at 8-9] Plaintiff, however, is not required to allege a prima facie case of discrimination in his Amended Complaint. "[W]here there is direct evidence, the prima

11

facie case, which allows for an inference of discrimination, is not required."[10] *EEOC v. Lehi Roller Mills Co.*, No. 2:08-CV-00591 DN, 2014 WL 1757987, at *2 (D. Utah May 1, 2014); *see also Finney v. Lockheed Martin Corp.*, 654 F. App'x 943, 945 (10th Cir. 2016) ("When there is no direct evidence of an employer's age discrimination, an employee must establish a prima facie case of discrimination . . ."). Plaintiff alleges that someone in Defendant's Human Resources department told him that he was subject to "automatic termination" at age 65. [#7 at 16] Although Plaintiff had not yet actually reached the age of 65 at the time of his termination, he alleges that he was told by Defendant's Human Resources department that he had been terminated because he had reached the age of 65. [*Id.*] Plaintiff thus alleges that age was the "but for" cause for the adverse employment action. *Jones*, 617 F.3d at 1277.

Without explication or citation to authority, Defendant argues that if "someone (or a Baker Hughes policy) established [Plaintiff] would remain employed with LTD benefits until age 65, this fact alone would make [Plaintiff's] claim one of contract, not employment discrimination." [#20 at 9] The Court disagrees. First, Defendant's argument is based upon a factual premise not found in the Amended Complaint. There is no allegation of any contractual agreement between Plaintiff and his employer that he could remain

---

[10] The Court notes that, even in the absence of direct evidence, a plaintiff is not required to plead a prima facie case of discrimination. "The *prima facie* case under *McDonnell Douglas* [ ] is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). As the Supreme Court explained, "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case because the *McDonnell Douglas* framework does not apply in every employment discrimination case"—*e.g.*, where a plaintiff is able to produce direct evidence of discrimination. *Id.* at 511. The Supreme Court further cautioned that "the precise requirements of a *prima facie* case can vary depending on the context" and thus "it may be difficult to define the precise formulation of the required *prima facie* case in a particular case" before "discovery has unearthed relevant facts and evidence." *Id.* at 512.

employed with long-term disability benefits until the age of 65. Instead, accepting the allegations as true and drawing all reasonable inferences in favor of Plaintiff, the Amended Complaint alleges that Plaintiff was told by Defendant (through Human Resources) that his employment would automatically terminate at age 65 and that he was terminated because Defendant understood that he had reached the age of 65. [#7 at 16] Second, with limited exceptions that do not appear applicable here, the ADEA prohibits "employee benefit plan[s] [that] require or permit the involuntary retirement of any individual . . . because of the age of such individual." 29 U.S.C. § 623(f)(2). Thus, contrary to Defendant's argument, to the extent a policy was in place that automatically terminated Plaintiff's employment at the age of 65, Plaintiff has stated a claim under the ADEA (which Defendant will then have a chance in later stages of the litigation to defend by disproving or justifying). *See Dahman v. Embassy of Qatar*, No. CV 17-2628 (JEB), 2018 WL 3597660, at *9 (D.D.C. July 26, 2018) (finding that "contract listing a mandatory retirement age shows that the Embassy knew or showed reckless disregard for the prohibition of age-based employment discrimination under the ADEA" (internal quotation omitted)). To the extent Defendant contends that Plaintiff waived any rights under the ADEA by entering into a contract that provided for his termination at age 65, as noted above, no such contract is found in the current record and, regardless, any such waiver may not be enforceable. *See* 29 U.S.C § 626(f) (providing that any waiver of rights under the ADEA must be "knowing and voluntary").

Defendant next argues that Plaintiff "has not proven that anyone at Baker Hughes ever discriminated against him for being over 40 years old" and notes that Plaintiff "was over 40 years old" at the time he was hired. [#20 at 9] That Plaintiff was over the age of

13

40 at the time he was hired does not prohibit him from pursuing an ADEA claim.[11]  The ADEA does not prohibit discrimination "for being over 40 years old" but rather prohibits discriminating against individuals over the age of 40 on the basis of their age.  As the Supreme Court has explained:

> The discrimination prohibited by the ADEA is discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), though the prohibition is "limited to individuals who are at least 40 years of age," § 631(a).  This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older.  The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age.*  Or to put the point more concretely, there can be no greater inference of *age* discrimination (as opposed to "40 or over" discrimination) when a 40-year-old is replaced by a 39-year-old than when a 56-year-old is replaced by a 40-year-old.

*O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (emphasis in original).  That an employer hires an employee when already a member of the protected class but does not discriminate against that employee until she reaches the age of 65 does not protect the employer from liability under the ADEA.

For the foregoing reasons, the Court finds that Plaintiff has adequately alleged a claim of discrimination under the ADEA and thus respectfully **RECOMMENDS** that the Motion be **DENIED** to the extent it seeks dismissal of Plaintiff's claim of age discrimination under the ADEA.

---

[11] The Court is aware of out-of-Circuit cases holding that "[a]ny inference of age animus is undermined [when the plaintiff] was well within the protected age group when she was hired and promoted." *Bruder v. Jewish Bd. of Family & Children's Servs.*, No. 10-CV-5951 (MKB), 2013 WL 789231, at *7 (E.D.N.Y. Mar. 4, 2013) (collecting cases).  These cases, however, do not hold, as a matter of law, that a plaintiff can never establish an ADEA claim where she was a member of the protected class when she was hired.

14

## C. Retaliation Claims

Based upon the allegations in the Charge of Discrimination, the Court understands that Plaintiff intends to assert retaliation claims pursuant to both the ADA and the ADEA. [#7 at 23 (stating that Plaintiff believes he has been "retaliated and terminated . . . in violation of the [ADEA] [and] . . . discriminated and retaliated against . . . in violation of the [ADA]")] "In order to establish a prima facie case of retaliation under the ADA, [the plaintiff] must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011) (internal quotation omitted). The elements of a prima facie case of retaliation under the ADEA are the same, requiring a plaintiff to show that "(1) he or she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008).

Based upon the allegations in the Amended Complaint, the Court understands Plaintiff to allege that Defendant retaliated against him based upon the complaints he raised with the DOJ and SEC in 2011, the FBI in 2012, and the Colorado U.S. Attorney in March 2016. [#7 at 7, 16, 18] It is unclear from the Amended Complaint that the complaints Plaintiff filed with the DOJ, SEC, FBI, and/or Colorado U.S. Attorney had anything to do with alleged violations of the ADA or ADEA. [*Id.*] Indeed, the only ADA or ADEA violations alleged in the Amended Complaint relate to Defendant's termination of

15

Plaintiff's employment in May 2016. [*Id.* at 23] The complaints to the DOJ, SEC, FBI, and Colorado U.S. Attorney all predate the alleged ADA and ADEA violation and thus those complaints do not appear to relate to any "protected opposition to discrimination" undertaken pursuant to the ADA or ADEA.

Nor has Plaintiff alleged any facts to plausibly allege any causal connection between Plaintiff sending the complaints to the various federal authorities and his termination.[12] To the contrary, as discussed above, Plaintiff has expressly alleged that he was terminated because Defendant thought he had reached the age of 65. [#7 at 16] There are no allegations in the Amended Complaint suggesting that this rationale for his termination was merely a pretext for a retaliatory motive. The Court thus finds that Plaintiff has not adequately alleged a causal connection between any protected activity and his termination.

For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim for retaliation under the ADA or the ADEA and thus respectfully **RECOMMENDS** that the Motion be **GRANTED** to the extent it seeks dismissal of Plaintiff's retaliation claims.

---

[12] The Tenth Circuit has recognized that "[a] retaliatory motive may be inferred when an adverse action closely follows protected activity." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Although Plaintiff alleges that he filed a complaint with the Colorado U.S. Attorney approximately two months prior to his termination, there is no indication that Plaintiff's complaint to the Colorado U.S. Attorney differed in content or tone to the complaints he filed with the SEC, DOJ, and FBI in 2011 and 2012. Under these circumstances, the Court finds the two-month gap between the filing of the complaint with the Colorado U.S. Attorney and his termination insufficient, standing alone, to adequately allege a retaliatory motive/causation, particularly given that Plaintiff has alleged an alternative motivation for his termination.

## IV. CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that Defendant's Motion [#20] be **GRANTED IN PART** and **DENIED IN PART**, as follows:

(1) **DENIED** to the extent it seeks dismissal of Plaintiff's claim for age discrimination under the ADEA; and

(2) **GRANTED** to the extent it seeks dismissal of (a) Plaintiff's claim for disability discrimination under the ADA and (b) Plaintiff's claims for retaliation under the ADA and ADEA.[13]

DATED: October 4, 2018                      BY THE COURT:

                                                  s/Scott T. Varholak
                                                  United States Magistrate Judge

---

[13] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (concluding that district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyoming Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).