IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 18-cv-00864-RBJ-STV

LOUIS MICHAEL ZAMORA,

    Plaintiff,

v.

BAKER HUGHES,

    Defendants.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on defendant Baker Hughes' motion for summary judgment. ECF No. 47. For the reasons stated herein, the motion is GRANTED.

**I. BACKGROUND**

This case arises out of Louis Zamora's work with BJ Services, which was acquired by Baker Hughes in approximately 2008 or 2009. ECF No. 47 ¶ 14. BJ Services was an oil services company that performed fracking and oil operations. *Id.* ¶ 1. Mr. Zamora applied to work for BJ Services in 2006 as a driver/equipment operator. *Id.* ¶ 2. BJ Services sent Mr. Zamora to work at its Farmington, New Mexico location in November 2006 after he completed a period of initial training. *Id.* ¶ 3. Mr. Zamora was fifty-four years old when he began work in Farmington. *Id.* ¶ 4. As a driver/equipment operator, Mr. Zamora attended safety meetings, drove a truck, and visited well sites to set up high-pressure pipes, pump sand into a mix master, insert mud into wellheads, and break down the worksite in anticipation of a subsequent work

crew. *Id.* ¶ 6.

On February 4, 2007 Mr. Zamora suffered a workplace injury. *Id.* ¶ 7. Following that injury, Mr. Zamora attempted to perform work for BJ Services on a light duty basis and sought medical attention regarding his injury. *Id.* ¶ 9. On April 16, 2007 Mr. Zamora went on disability from BJ Services, at which time he ceased performing any work but was not officially terminated. *Id.* ¶¶ 9–10. BJ Services ceased paying Mr. Zamora any wages at this point, and Mr. Zamora never performed any additional work for BJ Services. *Id.* ¶ 11. In 2008 Mr. Zamora began receiving Social Security Disability Insurance benefits based on the Social Security Administration ("SSA")'s determination that he was totally and permanently disabled. *Id.* ¶ 12. Because of this disability, Mr. Zamora is unable to perform any work. *Id.* ¶ 13.

Baker Hughes acquired BJ Services in approximately 2008 or 2009. *Id.* ¶ 14. In April 2016 Baker Hughes discovered that Mr. Zamora was still classified as a Baker Hughes employee even though he had not performed any work for BJ Services since April 2007 and had never performed any work for Baker Hughes. *Id.* ¶ 18. Baker Hughes changed Mr. Zamora's employment status from "inactive" to "withdrawn" with an effective termination date of May 1, 2016. *Id.* ¶ 19. Brian Dockey, Human Resources Manager at Baker Hughes, provided a sworn declaration testifying that this decision was "based on [Mr. Zamora's] job abandonment." ECF No. 47-5 ¶ 6.

Mr. Zamora has never received any payment from Baker Hughes and was not receiving payment at the time of his termination. *Id.* ¶¶ 16, 36. Mr. Zamora has made conflicting statements about whether he was receiving additional benefits from Baker Hughes, namely whether Baker Hughes was paying premiums on Mr. Zamora's two insurance policies. Mr. Zamora alleged in his amended complaint that his termination cost him his basic life insurance

2

and his accidental death and disability insurance. ECF No. 7 at 16. In his deposition he testified that he believed he still had these two insurance policies at the time of his termination, but he stated that he did not know who was paying the insurance premiums and that he had not ever received any benefits from those policies. ECF No. 47-2 at 122:17–123:25. When asked in his deposition whether "at the time [his] employment with Baker Hughes ended, [he was] receiving any benefits that [he] would no longer receive once [his] employment was done," he responded in the negative. ECF No. 47-2 at 123:21–25. He testified that he has never received any insurance benefits other than six months of benefits immediately following his injury in 2007. *Id.* at 122:9–16.

On approximately April 14, 2016 Mr. Zamora received the notice from Baker Hughes that his employment would be terminated effective May 1, 2016. ECF No. 47 ¶ 22. Mr. Zamora then contacted Mr. Dockey by telephone to ask why he had been terminated. *Id.* ¶¶ 23–24. According to Mr. Zamora, Mr. Dockey responded that it was corporate policy to terminate employees once they reached the age of sixty-five. *Id.* ¶ 24. Mr. Zamora informed Mr. Dockey that he was only sixty-four, but he does not recall how Mr. Dockey responded to that information. ECF No. 47-2 at 120:12–19. Mr. Dockey did not explain further or make any additional comments about Mr. Zamora's age. ECF No. 47 ¶ 28.

Prior to this conversation, Mr. Dockey had not communicated with anyone at Baker Hughes regarding Mr. Zamora or his employment prior to the termination decision. *Id.* ¶ 30. Nor did Mr. Dockey have personal knowledge of Mr. Zamora's age or of his employment with Baker Hughes prior to the telephone call. *Id.* ¶¶ 31–32. After the conversation, Mr. Dockey did not investigate further or consult with any other person at Baker Hughes to confirm the reason for the termination decision. *Id.* ¶ 25. Mr. Dockey has testified that Baker Hughes in fact has no

such policy of automatically terminating employees once they reach the age of sixty-five. *Id.* ¶ 35.

On September 2, 2016 Mr. Zamora submitted a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC"). ECF No. 16 at 23. In that charge Mr. Zamora alleged that Baker Hughes discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and on the basis of disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.* ECF No. 16 at 23. The EEOC sent Mr. Zamora a notice of dismissal and right to sue, signed on January 12, 2018. *Id.* at 25.

Mr. Zamora filed suit in this Court *pro se* on April 12, 2018. ECF No. 1. On April 13, 2018 Magistrate Judge Gordon P. Gallagher issued an order notifying Mr. Zamora of deficiencies in his complaint and ordering him to file an amended complaint within thirty days. ECF No. 5. On May 9, 2018 Mr. Zamora filed his amended complaint, asserting two claims: (1) "Unlawfully withholding Insurance, evasion of obligation to compensate injured worker"; and (2) "Termination of Employment." ECF No. 7 at 3–4. Both claims alleged discrimination on the basis of age and disability based upon termination of employment, different terms and conditions of employment, failure to accommodate disability, and retaliation. *Id.* On May 14, 2018 Judge Lewis T. Babcock issued an Order to Dismiss in Part and to Draw Case. ECF No. 8. That order dismissed Mr. Zamora's first claim as repetitive and split Mr. Zamora's second claim into two claims: one proceeding under the ADA and one proceeding under the ADEA. *Id.*

On July 5, 2018 Baker Hughes moved to dismiss Mr. Zamora's complaint for failure to state a claim. ECF No. 20. Baker Hughes addressed Mr. Zamora's ADA claim and his ADEA claim. *Id.* Baker Hughes also addressed Mr. Zamora's apparent retaliation claim, because

although Mr. Zamora did not expressly raise a retaliation claim in his amended complaint, he did check the "retaliation" box on his EEOC charge. *Id.* at 3–4. On October 4, 2018 Magistrate Judge Scott T. Varholak issued a recommendation to grant in part and deny in part Baker Hughes' motion to dismiss. ECF No. 31. On January 23, 2019 this Court adopted that recommendation, denying the motion with regard to Mr. Zamora's ADEA claim and granting the motion with regard to Mr. Zamora's ADA and retaliation claims. ECF No. 35.

As a result of this procedural history, Mr. Zamora's only surviving claim at this stage is his claim for age discrimination under the ADEA. Baker Hughes has moved for summary judgment dismissing that claim, arguing that Mr. Zamora has failed to meet his burden of showing age discrimination. ECF No. 47 at 7.

## II. STANDARD OF REVIEW

### A. <u>Motion for Summary Judgment</u>

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light

5

most favorable to the party opposing summary judgment. *See Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### B. *Pro se* **Litigants**

When a case involves *pro se* litigants, courts will review their "pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (confirming that this rule applies to all proceedings, including summary judgment proceedings). Nevertheless, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Hall*, 935 F.2d at 1110. *Pro se* parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks and citations omitted).

### III. ANALYSIS

Under the ADEA, an employer cannot "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Thus a plaintiff suing under the ADEA must prove that the challenged employment action was motivated, at least in part, by age. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000). The plaintiff may carry this burden either by presenting direct evidence of the employer's discriminatory intent or by presenting circumstantial evidence creating an inference of a discriminatory motive using the tripartite *McDonnell Douglas* burden-shifting analysis. *See Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Under the *McDonnell Douglas* analysis, the plaintiff first bears the burden of proving a prima facie case of discrimination. *See id*. If the plaintiff successfully proves a prima facie case,

the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See id*. Once the employer identifies a legitimate reason for its action, the burden shifts back to the employee to prove that the proffered legitimate reason was a pretext for discrimination. *See id.* at 1250.

Mr. Zamora does not present argument on either a direct evidence analysis or the *McDonnell Douglas* burden-shifting analysis. The only evidence that he presents in general support of his age discrimination claim is his telephone conversation with Mr. Dockey following notice of his termination, in which Mr. Dockey stated that Mr. Zamora was terminated pursuant to company policy that automatically terminates employees at age sixty-five. ECF No. 48 at 1–2. This evidence does not support a finding of age discrimination under either analysis.

### A. **Direct Evidence Analysis**

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 855 (10th Cir. 2007). It "requires 'proof of an existing policy which itself constitutes discrimination,' or 'oral or written statements on the part of a defendant showing a discriminatory motivation.'" *Id*. Stated differently, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Danville*, 292 F.3d at 1249. A plaintiff alleging direct evidence must "demonstrate a nexus between the allegedly discriminatory statements and the . . . decision to terminate [him]." *Perry v. Woodward*, 199 F.3d 1126, 1134 (10th Cir. 1999). The Tenth Circuit has distinguished "[e]vidence demonstrating discriminatory animus in the decisional process . . . from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Mitchell v. City of Wichita, Kansas*, 140 Fed. Appx. 767, 778 (10th Cir. 2005).

7

Here, when Mr. Zamora asked Mr. Dockey why he had been terminated, Mr. Dockey responded that it was company policy to automatically terminate employees once they reached age sixty-five. Yet Mr. Dockey testified that he was not a decisionmaker in Mr. Zamora's termination. Mr. Dockey testified that he was not even aware of Mr. Zamora's employment status or age prior to this post-termination telephone conversation. Mr. Dockey further testified that Baker Hughes has no such policy of automatically terminating employees once they reach age sixty-five. Mr. Zamora does not contest any of these facts. Mr. Dockey's statement is not direct evidence of discriminatory animus in the workplace, but rather a statement by a nondecisionmaker reflecting only a personal, unconfirmed, post hoc assumption.

### B. *McDonnell-Douglas* **Analysis**

Having failed to establish direct evidence of age discrimination, Mr. Zamora has the opportunity to establish age discrimination under the *McDonnell Douglas* burden-shifting analysis. *See Danville*, 292 F.3d at 1249–50. To prove a prima face case of age discrimination, a plaintiff must establish that: (1) he belongs to the protected age group; (2) his job performance was satisfactory; (3) he was terminated; and (4) he was replaced by a younger person. *See MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1441 (10th Cir. 1996).

Mr. Zamora cannot establish that his job performance was satisfactory. Mr. Zamora had not performed any work for BJ Services since 2007. He had never performed any work for, or had ever been paid by, Baker Hughes. The SSA had adjudged Mr. Zamora totally and permanently disabled, and he was unable to perform any work. He had not attempted to return to work since leaving in 2007.[1]

---

[1] As noted, on January 23, 2019 I adopted Magistrate Judge Varholak's recommendation to dismiss Mr. Zamora's ADA claim because an employer is "not obligated to continue plaintiff on indefinite medical leave for some eventual accommodation if and when [he] might try to return." ECF No. 31 at 9–10

Accordingly, Baker Hughes' motion for summary judgment is granted, and Mr. Zamora's claim for age discrimination under the ADEA is dismissed.

**ORDER**

Defendant's motion for summary judgment, ECF No. 47, is GRANTED. The Court enters summary judgment dismissing plaintiff's claim for age discrimination under the ADEA.

DATED this 3rd day of March, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

---

(quoting *Vice v. Blue Cross & Blue Shield of Okla.*, 113 F. App'x 854, 856 (10th Cir. 2004)) (internal quotations omitted); ECF No. 35 (adopting the recommendation).